Middleton, J.
 

 In connection with his appeal, the Tax Commissioner submits the following questions:
 

 (1) Where a foreign corporation is organized for the purpose of buying, selling and trading in investments, acquires investments at the time of organization in exchange for its capital stock and buys, sells and trades in investments, including some of those acquired at the time of its organization, do particular investment items so acquired but not disposed of through succeeding years have a situs for franchise tax purposes in Ohio in which the principal office is located and from which office all its business activities are conducted?
 

 (2) If such stocks are not allocable to Ohio, then, under the circumstances described in question No. 1, do particular investment items so acquired but held in subsequent years in altered form, resulting from intervening corporate reorganization or other material change in the investment characteristics, have such situs in Ohio?
 

 (3) Does stock in Ohio financial institutions owned or used in Ohio by a foreign corporation have such situs in Ohio?
 

 These questions arise in connection with the efforts of the Tax Commissioner to comply with and follow the instructions contained in Section 5498, General Code. The next preceding sections of the Code require the filing annually with the Tax Commissioner of a report by both domestic and foreign corporations in the form specified. The information so required to be filed with the Tax Commissioner includes the value of the property owned or used.by the corporation as shown on its books both Avithin and without the state
 
 *361
 
 and the total amount of business done and the amount of business done within the state during the preceding annual accounting period. Then Section 5498, General Code, requires the Tax Commissioner to determine the value of the issued and outstanding shares of stock of the reporting corporation and to determine the base upon -which the fee, or franchise tax, shall be computed. The rule therein specified for that computation is as follows:
 

 “Divide into two equal parts the value as above determined of the issued and outstanding shares of stock of each corporation filing such report. Take one part and multiply by a fraction whose numerator is the fair value of all the corporation’s property owned or used by it in Ohio and whose denominator is the fair value of all its property wheresoever situated in each case eliminating any item of good will; take the other part and multiply by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period and whose denominator is the total value of its business during said year wherever transacted.
 

 “In determining the amount or value of intangible property, including capital investments, owned or used in this state by either a domestic or foreign corporation the commission [er] shall be guided by the provisions of Section 5328-1 and 5328-2 of the General Code * * *."
 

 Section 5498, General Code, appears in Chapter 8 of Title I of Part Second of the General Code. Title I covers the general subject of taxation and comprises 15 chapters. Chapter 8 deals with excise and franchise taxes on corporations. Sections 5328-1 and 5328-2 appear in Chapter 2 of Title I which chapter defines generally the property in Ohio which is taxable and
 
 *362
 
 contains the inheritance tax provision. This arrangement is stated to make clear that Sections 5328-1 and 5328-2 are not included in the chapter relating to franchise taxes but serve an entirely different primary purpose in the Code.
 

 Section 5328-1, General Code, provides in part:
 

 “All moneys, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation, excepting as provided in this section or as otherwise provided or exempted in this title * * Property of the kinds and classes mentioned in Section 5328-2 of the General Code, used in and arising out of business transacted in this state by, for or on behalf of a nonresident person, other than a foreign insurance company as defined in Section 5414-8 of the General Code, and non withdrawable shares of stock of financial institutions and dealers in intangibles located in this state shall be subject to taxation; and all such property of persons residing in this state used in and arising out of business transacted outside of this state by, for or on behalf of such persons, and nonwithdrawable shares of stock of financial institutions located outside of this state, belonging to persons residing in this state, shall not be subject to taxation.”
 

 The pertinent portions of Section 5328-2, General Code, are:
 

 “Property of the kinds and classes herein mentioned, when used in business, shall be considered to arise out of business transacted in a state other than that in which the owner thereof resides in the cases and under the circumstances following:
 

 * * *
 

 “In the case of investments not held in trust, when made, created or acquired in the course of repeated transactions of the same kind, conducted from an office
 
 *363
 
 of the owner in such other state, and (1) representing obligations of persons residing in such other state or secured by property located therein, or (2) when an officer or agent of the owner at the owner’s office in such other state, has authority, in the course of the owner’s business, to receive or collect the income thereon or the principal, if any, or both when due, or to sell and dispose of the same.”
 

 Another section of the General Code which is of some collateral importance is Section 5323 which appears in Chapter 1 of Title 1. That chapter is comprised of definitions which are applicable throughout the other 14 chapters of Title I.
 

 Section 5323, General Code, defines investments as follows:
 

 “The term ‘investments’ as used in this title, includes the following:
 

 “Shares of stock in corporations, associations and joint stock companies, under whatever laws organized or existing, excepting * * * (2) those in financial institutions, dealers in intangibles and domestic insurance companies as defined by Chapter Four of this title * • V’
 

 The Tax Commissioner took the view that the 14 blocks of stock exchanged along with other property by Mr. Kettering for the entire capital stock of C. F.' Kettering, Inc., at the time of that company’s incorporation in 1925 were acquired by C. F. Kettering, Inc., “in the course of repeated transactions of the same kind, conducted from an office of the owner in such other state [Ohio],” and that “an officer or agent of the owner at the owner’s office [in Dayton] in such other state [Ohio], has authority, in the course of the owner’s business, to receive or collect the income thereon or the principal, if any, or both when due, or to sell and dispose of the same.” The com
 
 *364
 
 missioner, therefore, held that the requirements for Ohio situs under Section 5328-2 of the General Code were met with respect to the 14 blocks of stock.
 

 For reasons hereinafter stated it is necessary to consider separately the Winters National Bank & Trust Company stock. As to the other 13 blocks of stock which are not investments in financial institutions, this court agrees with the reasoning of the Board of Tax Appeals and disagrees with the conclusions reached by the Tax Commissioner. We do not believe that it can logically be said that those blocks of stock were acquired by C. F. Kettering, Inc., "in the course of repeated transactions of the same kind, conducted from an office of the owner in such other state [Ohio].’-' They were acquired in a single isolated transaction at the time the company was organized in Delaware in 1925. There was no course of repeated transactions with respect to those blocks of stock. The company owned other stocks which were acquired by it in the course of repeated transactions characteristic of the business of a corporation engaged in dealing in securities. Those transactions occurred during the years subsequent to the acquisition of the 14 blocks of stock now under consideration and they do not give character to the single transaction in 1925 by which the stocks in question were acquired. Furthermore, that transaction having occurred coincident with the organization of the company in Delaware, it is illogical to assert that the transaction was conducted from the office of the owner in Dayton, Ohio.
 

 The commissioner urges that the change in the form and number of stock certificates held in the five corporations above named (not including the Winters National Bank
 
 &
 
 Trust Company stock) eliminates any benefit, with respect to them, which may have resulted from the manner of their original acquisition. With that contention we do not agree. Those changes
 
 *365
 
 resulted from reorganization or stock split-ups and not from new purchases or from normal trading in stocks. They were not initiated by C. F. Kettering, Inc. They did not result in new acquisitions but merely in a change in the form of the certificates or in the number of shares represented by the certificates.
 

 The manner of acquisition of the 13 blocks of stock fails to meet the first qualification stated in Section 5328-2, General Code, for Ohio situs.
 

 Passing now to the Winters National Bank & Trust Company stock, the situation is somewhat different.
 

 As hereinabove stated, Section 5498, General Code, provides that in determining the amount or value' of intangible property used or owned in this state the commissioner shall be guided by the provisions of Sections 5328-1 and 5328-2, General Code. The provisions of Section 5328-2, General Code, have no application to stock in financial institutions for the reason that the definition of “investments” contained in Section 5323, General Code, does not include stock in financial institutions. We do, however, receive assistance with respect to the stock in the Winters National Bank
 
 &
 
 Trust Company from the terms of Section 5328-1, General Code. That section is hereinabove quoted and provides in substance that (1) property of all kinds and classes mentioned in Section 5328-2 of the General Code and used in and arising out of busi-. ness transacted in this state by, for or on behalf of a nonresident person and (2) nonwithdrawable shares of stock of financial institutions and of dealers in intangibles located in this state shall be subject to taxation. That section specifically excepts foreign insurance companies as defined in Section 5414-8, General Code, when enumerating the classes of taxable property in Ohio of nonresidents, but it specifically includes as taxable property nonwithdrawable shares of stock of financial institutions located in Ohio.
 

 
 *366
 
 The stock of the Winters National Bank & Trust Company certainly represents ‘ ‘ nonwithdr awable shares of stock of financial institutions * * * located in this state” and as such is made “subject to taxation ’ ’ by the above-quoted language. That stock must be allocated to Ohio and be included in the “property numerator” in determining the tax base when computing the company’s franchise taxes for the tax years in question. This conclusion with respect to the treatment to be accorded the Winters National Bank & Trust Company stock is in harmony with the decision of the Board of Tax Appeals.
 

 We, therefore, find that the decision of the Board of Tax Appeals is reasonable and lawful and it is affirmed in its entirety.
 

 Decision affirmed.
 

 Weygandt, C. J., Zimmerman, Stewart, Taet, Matthias and Hart, JJ., concur.