Taft, J.,
dissenting in part and concurring in part. Although appellant apparently contended before the Board of Tax Appeals that it was not subject to payment of the Ohio franchise tax because it was not “doing business in Ohio,” a reading of appellant’s brief in this court discloses that no such contention was made in this court. In disposing of that contention, the Board of Tax Appeals said: *433 Standard Carloading Corp. v. Glander, Tax Commr., 152 Ohio St., 404, and C. F. Kettering, Inc., v. Glander, Tax Commr., 155 Ohio St., 356, leave this board with considerable donbt as to whether appellant was doing business in this state. That doubt must be resolved in the taxpayer’s favor. But this conclusion cannot be the end of this controversy. ’ ’
*432 “Having in mind from the proof offered on evidence that all taxable assets of appellant * * * -were acquired at the time of its organization, and are now held by appellant solely for the purpose of collecting rentals, interest and principal for the benefit of appellant’s stockholders, this board is unable to say or find that appellant was engaged in business in Ohio over the periods assessed. Careful reading of Cliffs Corp. v. Evatt, Tax Commr., 138 Ohio St., 336, and what has been thereafter said in
*433 Reference was then made by the board to the portions of the syllabus in Aluminum Co. of America v. Evatt, Tax Commr., 140 Ohio St., 385, 45 N. E. (2d), 118, stating that the franchise tax is levied not only “for the privilege of doing business in this state” but also for “the privilege of owning a part or all of the foreign corporation’s capital or property in this state.” It was therefore held that, since appellant owned property in Ohio, an Ohio franchise tax could be levied against it. That conclusion is not challenged in this court.
The following findings were also made by the Board of Tax Appeals:
“Appellant * * * since its formation in 1948, owned three automobiles, two of which are maintained in Ohio and one in Florida, and are said to be used in company business or for the use of H. T. Bradner, the president and treasurer * * *. It owns the real estate now under lease * * * and collects the rents therefor. It owns * * * two notés and collects the payment of interest thereon. The same is true of other accounts receivable. All collections so made and sums received are deposited in two Cleveland banks [the National City Bank and the Union Bank of Commerce]. It has held no meetings in Delaware. All meetings have been held in Ohio or Florida in accordance with the pleasure of the company president, H. T. Bradner. Mr. Bradner is a resident of Cleveland, spending part of his time in Florida. All company officers reside in Ohio. It has no bank accounts, office or place of business, or does any business, outside of Ohio. It has no property outside of Ohio other than the one automobile in Florida, and its ‘patents’ and ‘experimental and development account’ which the Tax Commissioner has accorded a non-Ohio situs in his final order. H. T. Bradner, as president and treasurer, is the only one authorized to check against and disperse the two Cleveland bank accounts. The company has an accountant on a part-time basis. Bradner, *434 as president, has established a third bank account in the accountant’s name. The accountant from this petty cash deposit pays all bills and company expenses. Bradner keeps this account at all times near $1,000 in amount.”
The first contention made by appellant in this court is that its bank accounts in the National City Bank and the Union Bank of Commerce constituted general reserves and should not be considered in determining franchise tax. In support of this contention, appellant cites paragraph two of the syllabus of C. F. Kettering, Inc., v. Evatt, Tax Commr., 144 Ohio St., 419, 59 N. E. (2d), 370. This paragraph of the syllabus and the decision rendered in that case fully support this contention. That paragraph of the syllabus reads:
“Under the provisions of Sections 5498, 5328-1 and 5328-2, General Code, as they are connected and related, a general bank deposit or account maintained in Ohio by a corporation organized under the laws of another state and used by it for the purposes of its business generally, within and without Ohio, may not be included in the base for the computation of the franchise tax to be collected from such foreign corporation, even though such deposit or account may fluctuate in amount and the funds therein are withdrawable by the Ohio officers or agents of the corporation.”
It was said in the opinion by Zimmerman, J., at pages 425 and 426:
“Reading Sections 5328-1 and 5328-2, General Code, as they are connected with Section 5498, they mean that Ohio bank deposits of a foreign corporation or other nonresident are to be accorded an Ohio situs for the imposition of franchise taxes where they are used exclusively in business transacted in Ohio and are withdrawable by an officer or agent having an Ohio office. It logically ensues that where Ohio bank deposits of a foreign corporation are used by it in transacting its business generally, within and without Ohio, the sections do not contemplate that such deposits shall be taxed locally.
i i * # *
“In other words, where a foreign corporation opens and keeps a general account in an Ohio bank and uses it in its business everywhere', such account is not taxable in this state, even *435 though withdrawable by officers and agents in Ohio. Here, it is to be remembered that the funds in the Winters National Bank & Trust Company represented appellant’s sole bank account. Having no other bank account, such account necessarily represented appellant’s general balance — the amount remaining at any time after charging withdrawals against deposits.
“We conclude, under the circumstances, that appellant’s bank account was not subject to a franchise tax in Ohio. If the matter were to be viewed differently, we can conceive of complications and difficulties in the field of taxation which might be encountered by corporations organized under the laws of Ohio maintaining general bank deposits in other states used in the conduct of their businesses generally.”
In the instant case there were three bank accounts in Ohio instead of merely one. However, the findings of the Board of Tax Appeals are to the effect that “all bills and company expenses” were paid from the “petty cash deposit” in the accountant’s name and not from the accounts in the National City Bank and the Union Bank of Commerce. It would seem obvious therefore that those two latter bank accounts necessarily represented a foreign corporation’s “general balance” as much if not more than did the single bank account involved in the Kettering case. It may be observed further that, although Judge Zimmerman’s opinion recognizes the right of according an Ohio situs for the imposition of franchise taxes to deposits “where they are used exclusively in business transacted in Ohio” and certain other conditions are met, the Board of Tax Appeals in the instant case has specifically found that appellant was not even “doing business in this state.”
Appellant’s second contention in this court is “that notes receivable which were in existence at the time of the formation of this appellant, and which were taken over by this appellant on its original formation, have a situs in the state of Delaware and should not be included in determining franchise tax, under authority of” paragraph one of the syllabus of C. F. Kettering, Inc., v. Glander, Tax Commr., 155 Ohio St., 356, 98 N. E. (2d), 793. That paragraph of the syllabus and the unanimous decision in that case fully support appellant’s contention. That paragraph of the syllabus reads:
*436 “Where a corporation organized under the laws of Delaware in 1925 for the purposes, among others, of buying, selling and trading in investments, at the time of its incorporation exchanged all its authorized capital stock for blocks of stocks and bonds owned by an individual, and that corporation over a period of years sells and trades in investments and by such dealings disposes of all the bonds and some of the stock so acquired at the time of its organization but does not dispose of certain of the blocks of stock so acquired, those blocks of stock continuously retained from the time of incorporation do not have a situs for franchise tax purposes in Ohio in which state the principal office of the corporation is and was at all times located and from which office all its business activities are and were conducted.”
Appellant’s third contention in this court is “that on its original formation, it acquired a factory building having a book value of $3,514.53, and that that was this company’s book value, and that, in any determination of franchise tax,” that book value cannot be increased by the Tax Commissioner. We believe that this contention is disposed of by the following findings of the Board of Tax Appeals, which, on the record, do not appear to be either unreasonable or unlawful:
“From the evidence before the board it is not clear that appellant * * * keeps any books. If appellant did keep a set of books, the examiner * * * never saw them. No such books are in evidence. * * * * appellant made no franchise tax returns over the years in question.” Cf. National Tube Co. v. Peck, Tax Commr., 159 Ohio St., 98, 111 N. E. (2d), 11.
Stewart, J., concurs in the foregoing opinion by Taut, J.